

**FILED**

OCT 20 2015

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re:                              )   Case No. 14-21394-B-13
                                    )
PATRICK CLARK and SUZANNE CLARK,    )   DC No. PP-2
                                    )
                                    )
            Debtor(s).              )
_____)

<u>NOT FOR PUBLICATION</u>

**MEMORANDUM DECISION AND ORDER (1) GRANTING CLARIFICATION MOTION AND AMENDING ORDER OF SEPTEMBER 11, 2015, TO GRANT *MOTION TO APPROVE VALUATION AND TRANSFER OF STOCK PURSUANT TO CONFIRMED CHAPTER 13 PLAN* AND (2) DENYING EXTENSION MOTION AS MOOT**

**INTRODUCTION**

This memorandum decision addresses two motions filed by S&J Advertising, Inc., pending before the court:

(1) a *Motion to Clarify Procedures Governing Motion to Approve Valuation and Transfer of Stock Pursuant to Confirmed Chapter 13 Plan; Alternatively Motion to Enlarge Time for Removal; Request for Determination That Proceeding is Non-Core* filed on September 16, 2015; and

(2) a *Motion to Extend Time for Appeal of Order Denying Motion to Approve Valuation and Transfer of Stock Pursuant to Confirmed Chapter 13 Plan* filed on September 23, 2015.

The court is also aware of a notice of appeal filed on September 23, 2015, by debtors Suzanne and Patrick Clark.[1]

Each of these matters relate to oral rulings the court placed on the record in open court on September 9, 2015, and the

---

[1] To avoid confusion, "co-debtor" will refer to Suzanne Clark and "debtors" will refer to Patrick and Suzanne Clark.

corresponding order entered on September 11, 2015, that incorporates the oral rulings. Both the oral rulings and order grant in part and deny in part the corporation's *Motion to Approve Valuation and Transfer of Stock Pursuant to Confirmed Chapter 13 Plan* filed on June 10, 2015.[2]

The court has reviewed the clarification motion and its supplement, the debtor's opposition to the clarification motion, the corporation's reply, and all related supporting exhibits and declarations. The court also heard and has considered the argument of counsel stated on the record in open court on October 14, 2015. Appearances were noted on the record of that hearing. This memorandum decision disposes of both the extension and the clarification motions. It also amends the court's earlier decision on the valuation and transfer motion.

Because the clarification motion was filed five days after the order on the valuation and transfer motion was entered, the court will treat the clarification motion as a motion under Federal Rule of Civil Procedure 52(b) applicable by Federal Rule

---

[2] Generally, in granting that motion in part and denying it in part the court (I) held that the co-debtor's corporate shares could (and would) be sold under 11 U.S.C. § 363 without regard to California Corporations Code § 2000, (ii) declined to reach the debtors' constitutional objections to CCC § 2000 because the valuation and transfer motion could be resolved under the Bankruptcy Code, (iii) found that the debtors are precluded by judicial estoppel from claiming the $247,000 appraised "fair value" of the co-debtor's 50% interest in the corporation agreed to by jointly-appointed appraisers is too low, (iv) denied the debtors' request to conduct discovery related to the appraisal, and (v) set an evidentiary hearing to confirm the joint appraisers' valuation. The court reserved for determination at or after the evidentiary hearing other objections by the debtors to the joint-appraisal report.

of Bankruptcy Procedure 7052 and/or a motion under Federal Rule of Civil Procedure 59(e) applicable by Federal Rule Bankruptcy Procedure 9023.  That renders the corporation's request for an extension of time to appeal from the decision on the valuation and transfer motion to October 28, 2015, moot because the corporation will now have fourteen days after this decision is entered to appeal from the valuation and transfer motion and/or this decision if it elects to do so.  See Fed. R. Bankr. P. 8002(b)(1)(A)-(B).  Because the clarification motion was filed seven days before the debtors' notice of appeal, that also means the notice of appeal (assuming the appeal is not from an interlocutory order) becomes effective upon entry of this decision.  See Fed. R. Bankr. P. 8002(b)(2).

The clarification motion asks the court to clarify whether or not CCC § 2000 governs the corporation's valuation and transfer motion or, in other words, whether CCC § 2000 governs the sale of the co-debtor's 50% interest in the corporation required by the Debtors' Third Modified Chapter 13 Plan.  The court previously concluded that CCC § 2000 did not govern the valuation and transfer motion and that the co-debtor's 50% interest in the corporation could (and would) be sold under § 363.  The court clarifies and amends that decision.

Upon further consideration, the court now concludes that CCC § 2000 governs the valuation and transfer motion and the sale of the co-debtor's 50% interest in the corporation required by the third modified plan.  The clarification motion also asks the

court to extend the now-passed deadline to remove the CCC § 2000 proceeding pending in Solano County Superior Court. Based on this amended decision, the corporation's request for an extension of the removal deadline will be denied as moot. And the clarification motion asks the court to determine if the valuation and transfer motion is a core or non-core proceeding. That determination is provided below.

**BACKGROUND**

The debtors filed their chapter 13 petition on February 4, 2014. The co-debtor owned a 50% interest in the corporation when the petition was filed.

On June 4, 2014, the co-debtor elected to voluntarily dissolve the corporation. That election is irrevocable under CCC § 1902.

On August 11, 2014, the corporation filed a petition in state court to stay the irrevocable dissolution process and to ascertain the value of the co-debtor's corporate interest under CCC § 2000. The state court granted the corporation's petition on December 12, 2014.

On January 27, 2015, the corporation moved for relief from the automatic stay of 11 U.S.C. § 362(a) to continue the CCC § 2000 process pending in state court. This court granted that motion in part and denied it in part in an order entered on March 4, 2015. Since the state court had already appointed the parties' jointly-selected appraisers, this court concluded it was

more economical and a better use of resources to allow the joint appraisers to complete their work and value the co-debtor's 50% interest in the corporation. This court also ordered that "[a]ll further proceedings relating to the continuation and completion of Corporations Code § 2000 process to value and purchase the debtor's shareholder interest shall be brought before this court."

On March 10, 2015, six days after the stay relief order was entered, the debtors filed their third modified plan and a motion to confirm it. The third modified plan includes an "additional provision" that requires the debtors to contribute no less than $160,000 from the sale of the co-debtor's 50% interest in the corporation to fund the plan. The third modified plan also states that upon confirmation all property of the estate shall revest in the debtors. The motion to confirm the third modified plan was granted in a minute order entered on May 18, 2015. The confirmation order was entered the following day on May 19, 2015.

**DISCUSSION**

Federal Rule of Civil Procedure 52(b), incorporated by Federal Rule of Bankruptcy Procedure 7052, allows the court to amend its findings or make additional findings and amend its judgment accordingly. A motion under Rules 52(b)/7052 may also be joined with a motion under Federal Rule of Civil Procedure 59(e), as incorporated by Federal Rule of Bankruptcy Procedure 9023.

Rules 59(e)/9023 allow the court to alter or amend a judgment. In a recent opinion, <u>Tattersalls, Ltd. v. DeHaven</u>, 745 F.3d 1294 (9th Cir. 2014), the Ninth Circuit explained that if a court makes a substantive change in its decision, the judgment must be amended under Rule 59(e). <u>Id.</u> at 1299. Amending a judgment under Rule 59(e)/9023 after its entry is "an extraordinary remedy which should be used sparingly." <u>Allstate Ins. Co. v. Herron</u>, 634 F.3d 1101, 1111 (9th Cir. 2011). A Rule 59(e)/9023 motion may not be used to raise arguments or present evidence for the first time that could have been raised or presented earlier in the litigation. <u>Kona Enter., Inc. v. Estate of Bishop</u>, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted). However, such a motion may be granted on one of four grounds:

> (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law.

<u>Allstate</u>, 634 F.3d at 1111.

The remedy afforded under Rules 59(e)/9023 is appropriate in this case for two reasons: (1) to correct manifest errors of law and fact; and (2) to prevent manifest injustice.

    A.   <u>The Court Previously Did Not Fully Consider the Effect of the Revesting Provision in the Debtors' Confirmed Third Modified Plan.</u>

The court previously concluded that the co-debtor's 50% interest in the corporation could be sold under § 363 without

regard to CCC § 2000 because that interest was property of the estate over which the court had exclusive jurisdiction. While that may have been a correct assessment before the third modified plan was confirmed on May 19, 2015, the court now recognizes that under 11 U.S.C. § 1327(b) that was not a correct assessment when the valuation and transfer motion was filed on June 10, 2015, and heard on September 9, 2015.³ Upon confirmation of the third modified plan, § 1327(b) operated to revest the co-debtor's corporate interest in the co-debtor. Revesting fundamentally transformed the nature of the co-debtor's 50% interest from property of the estate to property of the debtor. That transformation is not insignificant.

    The court has reviewed and considered <u>Cal. Franchise Tax Bd. v. Kendall (In re Jones)</u>, 657 F.3d 921 (9th Cir. 2011), which it previously overlooked and neither party cited. The issue decided by the Ninth Circuit in <u>Jones</u> was whether a taxing authority had violated § 362(a) in seeking to collect delinquent, post-petition taxes from the debtor during the pendency of the debtor's chapter 13 plan. The Ninth Circuit held that, under § 1327(b), because the debtor had a confirmed chapter 13 plan that vested property of the estate in the debtor-as opposed to the bankruptcy estate-the taxing authority did not violate the automatic stay by attempting to collect the taxes from the debtor. <u>Id.</u> at 928-29.

---

³11 U.S.C. § 1327(b) states as follows:

    (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

In reaching its decision, the Ninth Circuit discussed various interpretations by courts as to whether, and to what degree, property of the estate revests in a debtor upon plan confirmation under § 1327(b); however, it declined to adopt a particular approach. Id. at 928. Instead, the court concluded that it was sufficient under the facts of the case to "hold that under the plain language of § 1327(b), the property of the estate revests in the debtor upon plan confirmation, unless the debtor elects otherwise in the plan." Id.

Although the Ninth Circuit did not find it necessary to endorse a particular vesting rule under § 1327(b), the Ninth Circuit Bankruptcy Appellate Panel (which the Ninth Circuit affirmed) had adopted such a rule in its published opinion. After reviewing four approaches under § 1327(b), the BAP adopted the "estate termination approach" under which "all property of the estate vests in the debtor at confirmation[,]" unless the plan or confirmation order provides differently. Cal. Franchise Tax Bd. v. Jones (In re Jones), 420 B.R. 506, 514 (9th Cir. BAP 2009) (citation omitted). In other words, according to the BAP, the bankruptcy estate ceases to exist upon plan confirmation except for property the plan or confirmation order clearly reserves for the bankruptcy estate. Id. at 517. This court agrees with that approach.

Under Jones, then, the question is whether by committing $160,000 in proceeds from a sale of the co-debtor's 50% interest in the corporation to fund the third modified plan it was

intended that the co-debtor's entire corporate interest would remain property of the estate despite a provision in that plan that property of the estate revests in the debtors upon confirmation. In answering this question, the court finds the recent decision by Hon. Jim D. Pappas, United States Bankruptcy Judge District of Idaho, in In re Thiel, 2015 WL 2398555 (Bankr. D. Idaho 2015), extremely persuasive.

In Thiel, the trustee sought to sell the debtor's residence under § 363(h) after the debtor's plan was confirmed. Id. at *1-2. The trustee relied on Jones to argue that by committing proceeds from the sale of the residence to fund the plan, the residence did not revest in the debtor upon confirmation but, instead, remained property of the estate that the trustee could sell post-confirmation under § 363. Id. at *4. The court rejected that argument. The court first explained that under § 1327(b) the residence lost its status as property of the estate upon confirmation of the debtor's plan. Id. It also noted that the debtor's plan provided for the revesting of property of the estate in the debtor and the plan provision that obligated the debtor to fund the plan with proceeds from the sale of the residence was not the type of specific provision that Jones required in order to prevent property from revesting in the debtor upon confirmation and to instead remain property of the estate. Id. at *4-5.

In this case, the third modified plan states that property of the estate shall revest in the debtors upon confirmation. And

although the "additional provision" in that plan obligates the co-debtor to turn over no less than $160,000 to fund the plan upon the sale of her interest in the corporation, this court agrees with Thiel and concludes that language is insufficient to utilize the "except as otherwise provided" provision of § 1327(b). Thiel, 2015 WL 2398555 at *5 (citing Jones, 420 B.R. at 516-17 ("If a debtor seeks to postpone revesting of all or some of the property of the estate, the plan or order of confirmation should clearly say so. Saying so is easy to do." (Quotation omitted))." That means that upon confirmation of the third modified plan the estate ceased to exist, the co-debtor's 50% corporate interest revested in the co-debtor, and the co-debtor's corporate interest lost its status as property of the estate. No longer property of the estate, the co-debtor's 50% interest in the corporation could not be sold under § 363 which applies only to sales of property of the estate.

In sum, by confirming a chapter 13 plan that revests property of the estate in the debtors, and does not specifically reserve the co-debtor's 50% interest in the corporation as property of the estate upon confirmation, the sale required by the terms of the third modified plan and the valuation and transfer motion are governed by CCC § 2000 because § 363 is no longer applicable to the mandatory sale of the co-debtor's corporate interest post-petition.

One final point of clarification. Because the court has now determined that CCC § 2000 applies to the valuation and transfer

motion and governs the sale and transfer of the co-debtor's 50% interest in the corporation, the court touches briefly on the constitutional objections to CCC § 2000 and the CCC § 2000 process the debtors raised in opposition to the valuation and transfer motion. The court reaffirms its earlier ruling that it need not reach those constitutional objections because of its ability to resolve the valuation and transfer motion under the Bankruptcy Code as it has done in this amended decision, albeit under a different provision.[4]

In relevant part, § 1327(a) states that "the provisions of a confirmed [chapter 13] plan bind the debtor[.]" Principles of res judicata and finality, as partly codified in § 1327(a), can make even illegal provisions of a chapter 13 plan binding. County of Ventura Tax Collector v. Brawders (In re Brawders), 503 F.3d 856 (9th Cir. 2007); In the Matter of Gregory, 705 F.2d 1118, 1121 (9th Cir. 1983) (failure to raise objection to legality of confirmation at hearing or to appeal from confirmation order precludes later attack on plan or provision as illegal). Moreover, the res judicata effect of a confirmed chapter 13 plan is not necessarily limited to issues actually known prior to the confirmation hearing but, rather, includes all

---

[4]Although the debtors question the constitutionality of a state statute, they did not comply with Federal Rule of Bankruptcy Procedure 9005.1 (incorporating Federal Rule of Civil Procedure 5.1) which requires notice to the California Attorney General and certification by the court under 28 U.S.C. § 2403. Because the court is adjudicating the matter without reaching the constitutional question, compliance with the Rule is not required. See In re Clemente, 409 B.R. 288, 294 n.6 (Bankr. N.J. 2009).

issues that could have or should have been litigated at or before the confirmation hearing. <u>Trulis v. Barton</u>, 107 F.3d 685, 691 (9th Cir. 1997); <u>Duplessis v. Valenti (In re Valenti)</u>, 310 B.R. 138, 150 (9th Cir. BAP 2004).

Under § 1327(a), the third modified plan is res judicata as to any issues the debtors could have raised-but failed to raise-regarding the constitutionality of CCC § 2000. Certainly the debtors knew well before the third modified plan was confirmed that the co-debtor's 50% interest in the corporation would be sold and proceeds from that sale used to fund the plan. The debtors also knew as early as the stay relief proceedings, and thus well before the third modified plan was confirmed, that the CCC § 2000 process was to continue before this court. Yet, the debtors made no mention of any constitutional objection to CCC § 2000 prior to confirmation or when the third modified plan was confirmed. The res judicata effect of the order confirming the third modified plan now precludes those challenges under § 1327(a).

Based on the foregoing, the court concludes that the post-confirmation sale required by the "additional provision" of the debtors' confirmed third modified plan and the valuation and transfer motion are governed by CCC § 2000. Therefore, the court vacates and amends its oral rulings of September 9, 2015, and its order of September 11, 2015, and replaces both with this memorandum decision. And based on this court's amended decision, the court will enforce and implement the third modified plan in

the following manner:

    (1) The court will hold an evidentiary hearing on <u>Thursday, November 19, 2015, at 10:00 a.m.</u> at which time it will hear live testimony from the parties' joint appraisers and at or after which it will confirm, or adjust if warranted, the "fair value" stated in the *Joint Fair Valuation Report of Alan Statz and John Toney* [dkt. 108, exhibit 1]. <u>See</u> <u>Orange County Nursery</u>, 439 B.R. 144, 152 (C.D. Cal. 2010) ("Whether the appropriate valuation is the [$ 2000] appraised value or some other value is a matter for the Bankruptcy Court to determine in the first instance.").

    (2) The court will resolve the debtors' remaining objections to the appraisal report reserved on September 9, 2015, at or very shortly after the evidentiary hearing.

    (3) The award of the joint appraisers determined following the evidentiary hearing, as confirmed by this court, shall then be final and conclusive upon all parties.

    (4) The court will enter a decree which shall provide in the alternative for winding up and dissolution of the corporation unless payment is made for the co-debtor's shares within the time specified by the decree.

    (5) If the corporation, as the purchasing party, desires to prevent the winding up and dissolution it shall pay to the co-debtor or tender to the trustee the value of the co-debtor's shares ascertained and decreed within the time specified, or, in case of an appeal, as fixed on appeal. On

receiving such payment or the tender thereof, the co-debtor shall transfer her corporate shares to the corporation.

(6) If the corporation does not make payment for the shares within the time specified in the court's decree, judgment shall be entered against it and the surety or sureties on the bond for the amount of the expenses (including attorneys' fees) of the co-debtor.

B. <u>The Corporation's Request for Extension to Remove the CCC § 2000 Proceeding Pending in State Court is Denied as Moot.</u>

Based on the court's decision stated above, the corporation's request under Federal Rule of Bankruptcy Procedure 9006(b)(1) to extend the time in 28 U.S.C. § 1452 and Federal Rule of Bankruptcy Procedure 9027 to remove the CCC § 2000 proceeding pending in the Solano County Superior Court will be denied as moot.

C. <u>The Valuation and Transfer Motion is a Core Proceeding or, if Non-Core, is a Proceeding that the Corporation Consented to Have Determined by a Bankruptcy Judge.</u>

The corporation requests a determination as to whether the valuation and transfer motion is a core or non-core matter. Confirmation of the chapter 13 plan was a core matter under 28 U.S.C. §§ 157(b)(2)(B), (L) and (O). The valuation and transfer motion asks the court to interpret and implement the debtors' confirmed third modified plan in general and the sale provisions of that confirmed plan in particular. This court has core

jurisdiction to do that. In re Lyondell Chem. Co., 445 B.R. 277, 287 (Bankr. S.D.N.Y. 2011) ("[A] bankruptcy court retains core jurisdiction to interpret and enforce its own prior orders, including and especially confirmation orders."); see also Travelers Indem. Co. v. Bailey, 557 U.S. 137, 151 (2009) ("[T]he Bankruptcy Court plainly ha[s] jurisdiction to interpret and enforce its own prior orders."); Williams v. Citifinancial Mortgage Co. (In re Williams), 256 B.R. 885, 892 (8th Cir. BAP 2001) ("the enforcement of orders resulting from core proceedings are themselves considered core proceedings"); In re Brown's Chicken & Pasta, Inc., 503 B.R. 86, 90 (Bankr. N.D. Ill. 2013) (bankruptcy court found to have authority to interpret its order confirming a plan to determine whether items in dispute were covered by a bankruptcy sale).

**CONCLUSION**

Upon consideration of the clarification motion and further consideration of the valuation and transfer motion;

IT IS ORDERED that the clarification motion is GRANTED IN PART AND DENIED IN PART as follows:

(i) GRANTED insofar as the court amends its prior decision and concludes the valuation and transfer motion and the sale of the co-debtor's 50% interest in the corporation required by the third modified plan are governed by CCC § 2000;

(ii) GRANTED to the extent the court determines the valuation and transfer motion to present a core matter; and

(iii) DENIED AS MOOT to the extent the corporation requests an extension to remove the CCC § 2000 proceeding pending in the Solano County Superior Court.

IT IS FURTHER ORDERED that the court's prior decision granting in part and denying in part the valuation and transfer motion is amended for the reasons stated herein and to reflect that the valuation and transfer motion is GRANTED.

IT IS FURTHER ORDERED that the extension motion is DENIED AS MOOT.

IT IS FURTHER ORDERED that the evidentiary hearing set for October 22, 2015, at 10:00 a.m. is VACATED and RESET to <u>Thursday, November 19, 2015, at 10:00 a.m.</u>

IT IS FINALLY ORDERED that all other rulings stated orally on the record on September 9, 2015, and the order of September 11, 2015, remain unchanged except and unless amended herein.

Dated: October 20, 2015.

_____
UNITED STATES BANKRUPTCY JUDGE

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

W. Scott de Bie
P.O. Box 981444
West Sacramento CA 95798

Arthur Samuel Humphrey
78 Cernon St #A
Vacaville CA 95688

Thomas R. Phinney
400 Capitol Mall, Suite 2560
Sacramento CA 95814