**FILED**

FEB - 3 2016

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

In re:                                    )      Case No. 14-21394-B-13
                                          )
PATRICK DAVID CLARK and SUZANNE )      DC Nos. PP-7
JANETTE CLARK,                            )              ASH-3
                                          )              ASH-4
                                          )
                        Debtor(s).   )
_____ )

**AMENDED**

**CONSOLIDATED MEMORANDUM DECISION:**
**(I) GRANTING MOTION TO CONVERT AND CONVERTING THIS CASE TO A
CHAPTER 7 CASE [DKT. 244]; (II) DENYING MOTION TO ALTER OR
AMEND ORDER DENYING MOTION TO QUASH [DKT. 232]; (III)
DENYING APPLICATION FOR RULE 2004 EXAMINATION AND QUASHING
RELATED SUBPOENAS [DKTS. 228, 237]; and (IV) DISCHARGING
ORDER TO SHOW CAUSE WITH NO FURTHER SANCTIONS [DKT. 237]**

**INTRODUCTION**

There are four matters presently before the court: (1) an
application for a Rule 2004 examination filed by debtors Suzanne
Clark and Patrick Clark on December 9, 2015 [dkt. 228];[1] (2) the
debtors' motion to alter or amend an order denying the debtors'
earlier motion to quash filed on December 14, 2015 [dkt. 232];
(3) an order for debtors' former litigation and current
bankruptcy counsel - Arthur Samuel Humphrey - to show cause why
he should not be sanctioned, which order was entered by the court
sua sponte on December 15, 2015 [dkt. 237]; and (4) a motion to
convert this chapter 13 case to a chapter 7 case filed by S&J
Advertising, Inc., on December 23, 2015 [dkt. 244].[2]  Facts

_____

[1]To avoid confusion, "debtors" will refer to Patrick and
Suzanne Clark and "co-debtor" will refer to Suzanne Clark.

[2]The debtors are now represented in this chapter 13 case by
their litigation attorney, Mr. Humphrey.  Mr. Humphrey was

1 relevant to each matter are discussed within the section to which

2 each motion relates. All four matters were heard and argued on

3 January 20, 2016. Appearances were noted on the record. For the

4 reasons explained below, the motion to convert will be granted

5 and all other motions will be denied.

6

7 **JURISDICTION AND VENUE**

8     Federal subject-matter jurisdiction is founded on 28 U.S.C.

9 § 1334. Each of the matters addressed in this memorandum

10 decision are core proceedings that a bankruptcy judge may hear

11 and determine. 28 U.S.C. §§ 157(b)(2)(A) and (O). To the extent

12 they may ever be determined to be matters that a bankruptcy judge

13 may not hear and determine without consent, the parties

14 nevertheless consent to such determination by a bankruptcy judge.

15 28 U.S.C. § 157(c)(2). Venue is proper under 28 U.S.C. § 1409.

16

17 I.    **ORDER GRANTING MOTION TO CONVERT AND CONVERTING THIS CASE TO**
      **A CHAPTER 7 CASE [DKT. 244]**

18 **Introduction**

19

20     Presently before the court is a motion filed by S&J

21 Advertising, Inc., to convert this chapter 13 case to a chapter 7

22 case. The debtors have opposed the motion and the corporation

23 has replied to the debtors' opposition. The court has reviewed

24 the motion, the opposition, the reply, and all related exhibits

25 and declarations.

26

27 substituted for the debtors' former bankruptcy counsel on
December 21, 2015. References to the debtors' litigation

28 attorney are references to Mr. Humphrey.

1    The court held a hearing on the motion to convert on January
2    20, 2016.  At that time the court heard and considered arguments
3    and statements in support of and opposition to the motion.  For
4    the reasons explained below, the court concludes there is cause
5    under 11 U.S.C. § 1307(c).[3]  The court also concludes that
6    because there are non-exempt assets available to pay creditors,
7    conversion, rather than dismissal, is in the best interest of the
8    creditors and the estate.  See Nelson v. Meyer (In re Nelson),
9    343 B.R. 671, 675 (9th Cir. BAP 2006).  Therefore, the motion to
10   convert will be granted and this chapter 13 case converted to a
11   case under chapter 7 of the Bankruptcy Code.

12

13   **Background and Statement of Facts**

14   On October 16, 2015, the corporation filed an application to
15   examine the debtors under Federal Rule of Bankruptcy Procedure
16   2004.  The court authorized those examinations in orders entered
17   on October 20, 2015.  Subpoenas compelling the debtors to produce
18   documents by December 2, 2015, and appear for Rule 2004
19   examinations at the office of the corporation's attorney at 2:00
20   p.m. on December 4, 2015, issued on October 21, 2015.
21   The debtors moved to quash the corporation's Rule 2004
22   subpoenas on November 3, 2015.  The corporation opposed that

23

24       [3]Conversion is governed by § 1307(c) which states:
         [O]n request of a party in interest, ... and after
25       notice and a hearing, the court may convert a case
         under this chapter to a case under chapter 7 of this
26       title, or may dismiss a case under this chapter,
         whichever is in the best interests of creditors and the
27       estate, for cause[.]
28   11 U.S.C. § 1307(c).

- 3 -

motion on November 18, 2015, and the debtors replied to that
opposition on November 24, 2015.  The court held a hearing on the
debtors' motion to quash on December 2, 2015, and, at that time,
denied the motion.  The court also ordered the debtors to produce
the subpoenaed documents and appear for Rule 2004 examinations at
the offices of the corporation's attorney at 2:00 p.m. on
December 4, 2015.  The court placed its ruling on the record as
follows:

> I'm denying the motion to quash.  The debtors are
> ordered to appear as noticed in the subpoena on Friday,
> December 4th, at 2:00 p.m., and they are directed to
> produce the documents subject to cooperation between
> counsel.  If there's a dispute as to the document
> production, I'll hear it on very short notice.

The court memorialized its oral ruling in civil minutes
filed on December 2, 2015, and a civil minute order entered on
December 8, 2015.

Discussions after the hearing resulted in an agreement
between the debtors' litigation attorney and the corporation's
attorney to continue the court-ordered document production and
Rule 2004 examination date.  At the request of and as an
accommodation to the debtors, the date for document production
was extended to December 17, 2015, and the court-ordered Rule
2004 examinations were continued to December 21, 2015.

Despite these extensions, on December 14, 2015, the debtors'
litigation attorney sent the corporation's attorney an email
stating that the debtors would not produce documents by December
17, 2015, and they would not appear for Rule 2004 examinations on
December 21, 2015, as ordered.  Consistent with that email,
subpoenaed documents were not produced by December 17, 2015, and

1  the debtors failed to appear for their Rule 2004 examinations on
2  December 21, 2015.

3      Debtors informed the corporation's attorney they could
4  ignore the court's December 2, 2015, order to produce documents
5  and appear for Rule 2004 examinations because the order was
6  subject to clarification in the event of a dispute, and on
7  December 14, 2015, they moved to alter or amend that order which
8  meant they were free to disobey the court's order until the
9  motion to alter or amend was decided.  Regarding the latter, the
10 debtors relied on (and referred the corporation's attorney to)
11 two cases to support their position: <u>Creative Data Forms, Inc. v.</u>
12 <u>Pa. Minority Bus. Dev. Auth. (In re Creative Data Forms, Inc.)</u>,
13 72 B.R. 619 (Bankr. E.D. Pa. 1985), and <u>In re Reading</u>
14 <u>Broadcasting, Inc.</u>, 386 B.R. 562 (Bankr. E.D. Pa. 1982).

15     The debtors' decision to disobey this court's order of
16 December 8, 2015, is part of a larger and continuing pattern of
17 an abuse of the chapter 13 process in which the debtors have
18 engaged from the inception of this case.  And that abuse relates
19 primarily to the manipulation and knowing undervaluation of the
20 co-debtor's 50% interest in the corporation which is to be sold
21 and the proceeds used to pay creditors.  The debtors manipulated
22 and knowingly undervalued that interest in order to confirm plans
23 with substantially reduced payments to unsecured creditors and,
24 in turn, enhance the retention of non-exempt assets for their own
25 personal benefit.

26     The debtors filed a chapter 13 petition on February 14,
27 2014, and with that petition filed schedules - under penalty of
28 perjury - in which they valued the co-debtor's 50% interest in

- 5 -

1    the corporation at $42,250.  The debtors also filed a plan with

2    the petition and schedules.  That plan provided for payment of

3    approximately 50% to unsecured creditors.

4          Approximately one month after the petition, schedules and

5    initial plan were filed, on or about March 3, 2014, the

6    corporation provided the debtors with an appraisal which stated

7    that 100% of the equity in the corporation was valued at

8    $811,000.  The debtors made no effort to amend their schedules to

9    reflect the substantial difference in the valuation of the co-

10   debtor's 50% interest in the corporation between the schedules

11   filed with the petition and the appraisal.  In fact, there is no

12   indication that the debtors made any disclosure of this valuation

13   or the appraisal to the court, the trustee, or creditors.

14   Instead, based on the representation in the schedules that the

15   co-debtor's 50% interest in the corporation was worth only

16   $42,250, on May 12, 2014, the debtors obtained confirmation of

17   the initial plan which provided for payment of 50% of unsecured

18   claims.

19         Two days after the plan was confirmed, on May 14, 2014, the

20   debtors filed a first modified plan and motion to confirm it.

21   The proposed payments to unsecured creditors in this first

22   modified plan were again based on the value of the debtors' non-

23   exempt assets which the debtors stated was $58,036 and which

24   included the co-debtor's 50% interest in the corporation valued

25   at $42,250.  Again, although in March 2014 the debtors received

26   an appraisal which valued 100% of the corporate interest at

27   $811,000, the schedules were not amended and there was no

28   disclosure that the co-debtor's 50% interest may be worth more

- 6 -

than $42,250.  And yet, this time, the debtors proposed a plan
that *reduced* payments to unsecured creditors to 10%.
Confirmation of this plan was denied on July 8, 2014.  Three
weeks later, on July 30, 2014, the debtors received an offer from
the corporation to purchase the co-debtor's 50% interest for
$200,000, plus additional payments over time.

Despite (1) the March appraisal which valued 100% of the
shares of the corporation at $811,000 (and thus the co-debtor's
50% interest at $405,500) and (2) the corporation's July 2014
offer to purchase the co-debtor's 50% interest in the corporation
for $200,000, on September 2, 2014, the debtors filed amended
Schedules B and C in which they again valued the co-debtor's 50%
interest in the corporation at $42,250.  Based on the valuation
of non-exempt assets that included a valuation of the co-debtors'
50% interest at $42,250, and despite knowing that the interest
could be worth between $200,000 and $400,000, on September 2,
2014, the debtors also filed a second modified plan in which they
proposed to reduce payments to unsecured creditors from 50% to
10%.  Even more troubling, just six days later, on September 8,
2014, the debtors received a third-party offer to purchase 100%
of the corporate shares for a staggering $1,200,000.  None of
these values or offers were disclosed and, yet, knowing that the
co-debtor's 50% interest in the corporation could be worth
upwards of $600,000, the debtors allowed the court to confirm
their 10% repayment plan on October 16, 2014.

It was not until March 10, 2015, and then only after the
corporation informed the court that the co-debtor's 50% interest
in the corporation was likely to be valued at over $200,000 in a

- 7 -

joint appraisal prepared by the debtors' appraiser and one
selected by the corporation in a pending state court proceeding
under California Corporations Code § 2000, that the debtors filed
the third modified plan and motion to confirm it.  The third
modified plan was proposed as a 100% repayment plan based on the
anticipated valuation of the co-debtor's 50% corporate interest
in the California Corporations Code § 2000 proceeding.  The third
modified plan was confirmed in an order entered on May 18, 2015.[4]

    After the third modified plan was confirmed, on or about
June 6, 2015, an appraiser selected by the debtors and another
selected by the corporation prepared a joint appraisal in which
they valued the co-debtor's 50% corporate interest at $247,000.
Nearly a year and a half after the petition was filed, after
numerous sworn statements that the co-debtor's 50% interest was
worth only $42,250 knowing it was likely worth more, and two
confirmed plans with substantially reduced payments to unsecured
creditors based on a knowing undervaluation, the debtors now
claim the $247,000 value is too low.[5]

_____

    [4]This third modified plan was filed and confirmed based on
the representation it was a 100% repayment plan, but on July 8,
2015, the debtors' former bankruptcy counsel informed the court
the plan was in fact not a 100% plan.

    [5]It appears the debtors now claim the $247,000 valuation is
too low because they are obligated to pay litigation attorney's
fees from any surplus distribution from the sale of that
interest.  This is somewhat disconcerting in two respects.
First, the disclosure that the debtors' litigation attorney is to
be paid from surplus proceeds from the sale of the co-debtor's
50% interest in the corporation was made in § 329(a) disclosures
submitted over a year after the petition was filed and only after
the court required these disclosures before confirming the third
modified plan.  Again, this is another instance in which the

- 8 -

## Discussion

<u>Material Default by the Debtors With Respect to the Term of a Confirmed Plan</u>

Cause is defined in § 1307(c) to include a "material default by the debtor with respect to a term of a confirmed plan."  11 U.S.C. § 1307(c)(6).  The debtors' obligation to appear in court when ordered by the court to do so is a material term of the debtors' confirmed third modified plan inasmuch as the order confirming that plan states:  "The debtor shall appear in court whenever notified by the court to do so."  This court's order of December 2, 2015, ordering the debtors to appear for Rule 2004 examinations is an order for the debtors to appear in court.

The current version of Rule 2004 is derived from Section 21(a) of the Bankruptcy Act of 1898 and former Federal Rule of Bankruptcy Procedure 205.  <u>See</u> Lawrence P. King et al., Collier on Bankruptcy, Part 3(a) at 3-23 (15th ed. 1996); William T. Laube and Asa S. Herzog, Bankruptcy Act And Rules, p.a-438 (Matthew Bender 1973).  In relevant part, § 21(a) of the Bankruptcy Act of 1898 states that "[a] court of bankruptcy may, ..., by order require any designated person, including the bankrupt and his wife, *to appear in court or before a referee* ..., to be examined concerning the acts, conduct, or property of a bankrupt whose estate is in process of administration under

---

debtors were less than forthcoming with timely, accurate, and truthful information.  Second, this gives the debtors' litigation attorney a personal and financial stake in this bankruptcy case which may conflict with the best interest of the creditors and the estate.  In other words, the debtors' litigation attorney finds himself in a position where he may have been tempted to place his desire to be paid over interests of paying creditors.

1   this Act[.]" (Emphasis added).  As amended in 1938, § 21(a) of

2   the 1898 Bankruptcy Act states in relevant part:  "The court may,

3   upon application ..., by order require any designated persons,

4   including the bankrupt ... to *appear before the court*... to be

5   examined concerning the acts, conduct, or property of a

6   bankrupt."  (Emphasis added).

7        Former Federal Rule of Bankruptcy Procedure 205, which took

8   effect on October 1, 1973, did not specifically require

9   examinations to be conducted in the courtroom.  As the court in

10  In re Symington, 209 B.R. 678 (Bankr. D. Md. 1993), explained:

> 11     On October 1, 1973, when the Federal Rules of
>        Bankruptcy Procedure went into effect, Bankruptcy Rule
> 12     205 did not specifically require that bankruptcy
>        examinations be conducted in open court.  See 12
> 13     Collier on Bankruptcy ¶ 205.11 (14th ed. 1978).  The
>        practice since 1973 has been to hold bankruptcy
> 14     examinations outside of the presence of the court, in
>        the same manner as pretrial discovery is conducted
> 15     under the Federal Rules of Civil Procedure.

16  Id. at 693.

17       Rule 205 did not and, under the Rules Enabling Act at 28

18  U.S.C § 2075, could not change substantive provisions of the

19  Bankruptcy Act.  In other words, the Rules of Bankruptcy

20  Procedure were adopted to govern the procedural aspects of

21  substantive statutory provisions but did not change the

22  substantive law as it existed.  See In re Tallerico, 523 B.R.

23  774, 783-84 (Bankr. E.D. Cal. 2015) (explaining that 1973 rules

24  were limited to procedural matters in compliance with the Rules

25  Enabling Act).

26       Given the silence in Rule 205 as to where an examination was

27  to take place, it follows that the location of the examination

28  was viewed as a procedural matter removed from statute within the

- 10 -

boundaries of the Rules Enabling Act. Id. (explaining that rule
drafters were careful to recognize procedural/substantive
boundaries). The substantive provision of the Bankruptcy Act
that characterized an examination of the debtor as a proceeding
before the bankruptcy court was unaffected by Rule 205 and,
subsequently, by Rule 2004. Thus, although permissible to
conduct a Rule 2004 examination outside the confines of a
courtroom, the examination itself substantively remains a
proceeding in or before the bankruptcy court now just as it was
under the 1898 Bankruptcy Act. See In re Samuelsohn, 174 F. 911,
912 (W.D.N.Y. 1909) (describing examination testimony given by
debtor during course of bankruptcy case as part of the record in
the bankruptcy proceeding). That means when the debtors
disobeyed this court's order of December 2, 2015, and failed to
appear for Rule 2004 examinations, they failed to appear in court
when they were ordered to do so and as they were required to do
by a material term of the confirmed third modified plan. That
constitutes a default.

In short, the debtors' decision to disobey this court's
order to appear for Rule 2004 examinations is a material default
by the debtors with respect to a term of the confirmed third
modified plan. That, in turn, is cause under § 1307(c)(6).
And the reasons given by the debtors in an effort to support
their decision to disobey the court's December 2, 2015, order are
not persuasive or credible. And they do not negate the existence
of cause.

The court's order for the debtors to appear for Rule 2004
examinations was clear, specific, and direct. Whereas the order

- 11 -

to produce documents was subject to intervention by the court, on very short notice, in the event of a dispute regarding production, the order to appear for examinations was not. The latter was direct and unconditional.

Even assuming the debtors understood that both aspects of the court's order, i.e., document production and Rule 2004 appearances, were subject to further court intervention in the event of a dispute, the debtors failed to seek that intervention *before* the continued examination date. Instead, they waited twelve days to file a motion to alter or amend the court's December 2, 2015, order and filed that motion seven days before the continued examination date. Instead of asking the court to hear that motion on shortened notice, see LR 9014-1(f)(3), the debtors set the motion for hearing under Local Rule 9014-1(f)(1) which requires at least 28 days' notice resulting in a hearing date of January 20, 2016 - nearly a month after the date on which they were to appear for Rule 2004 examinations.

The court is persuaded that the debtors' decision to set a hearing on the motion to alter or amend was a tactical decision made for the purposes of delay. This is apparent from the position the debtors and their litigation attorney took from the day the motion to alter or amend was filed on December 14, 2015, through the date of their non-appearance on December 21, 2015; namely, that the pending motion to alter or amend gave them license to disobey the court's order to appear for their Rule 2004 examinations until that motion was decided. The debtors' argument is completely lacking in merit.

The debtors cited two cases to support the position that

- 12 -

1  they could freely disobey this court's order until the motion to
2  alter or amend was decided:  <u>Creative Data Forms</u>, 72 B.R. 619,
3  and <u>Reading Broadcasting</u>, 386 B.R. 562.  Not only are those cases
4  not binding on this court, but they are not even persuasive
5  authority.  Neither case stands for the proposition – even
6  remotely – that a party may willfully disobey a court order so
7  long as a motion to alter or amend is filed and pending before
8  compliance is required.  Rather, both cases stand for the
9  unremarkable proposition that a motion to alter or amend prevents
10  an order from becoming final for purposes of filing an appeal and
11  the time to file a notice of appeal.  That is also stated in Rule
12  8002(b)(1).  But that does not mean a party is free to disregard
13  an order.

14      Several courts have held that a pending motion to alter or
15  amend an order does not permit a party to disobey the order
16  subject to the motion.  <u>See</u> <u>In re Petro</u>, 18 B.R. 566, 568–69
17  (Bankr. E.D. Pa. 1982) (stating that debtors are free to petition
18  the court to modify an order they disagreed with but pending
19  motion did not excuse compliance with order absent a stay even if
20  order was erroneous, improper, or unconstitutional); <u>Azpitarte v.</u>
21  <u>King County</u>, 2009 WL 939124 At *1 (W.D. Wa. 2009) ("[A] pending
22  motion [to amend] does not authorize a party to disobey an
23  explicit Court order[.]").  Moreover, such a rule could not be
24  reconciled with well-established Supreme Court and Ninth Circuit
25  authority.

26      The U.S. Supreme Court has made it abundantly clear that a
27  party is not free to disobey a federal court order even if it
28  dislikes, disputes, or disagrees with the order.  In <u>Maness v.</u>

- 13 -

Meyers, 419 U.S. 449 (1975), the Supreme Court stated: "If a
person to whom a court directs an order believes that order is
incorrect, the remedy is to appeal, but, absent a stay, he must
comply promptly with the order pending appeal." Id. at 458.  The
Ninth Circuit has also made abundantly clear that there are no
circumstances - not even exceptional circumstances - that warrant
disobedience with a federal court order even if the party or its
attorney disagrees with or dislikes the order and even if the
order is erroneous or improper.  In Crystal Palace Gambling Hall,
Inc. v. Mark Twain Indus. (In re Crystal Palace Gambling Hall,
Inc.), 817 F.2d 1361 (9th Cir. 1986), the Ninth Circuit stated:

> If the appellants believed that the district court
> incorrectly issued an order, their remedy was to appeal
> and request a stay pending the appeal. Maness v.
> Meyers, 419 U.S. 449, 458, 95 S.Ct. 584, 590, 42 L. Ed.
> 2d 574 (1975); see also Chapman v. Pacific Telephone
> and Telegraph Co., 613 F.2d 193, 197 (9th Cir. 1979).
> Absent a stay, all orders and judgments of courts must
> be complied with promptly. Mazzola, 716 F.2d at 1240
> (quoting Maness v. Meyers, 419 U.S. 449, 458, 95 S. Ct.
> 584, 590, 42 L. Ed. 2d 574 (1975)).  Although both
> Crystal Palace and the shareholders appealed, no stay
> was obtained.  A party cannot disobey a court order and
> later argue that there were 'exceptional circumstances'
> for doing so.  This proposed 'good faith' exception to
> the requirement of obedience to a court order has no
> basis in law, and we reject the invitation to create
> such an exception.  The appellants were not justified
> by exceptional circumstances in disobeying the court's
> order.

Id. at 1365.

       In light of this otherwise clear, unambiguous, and binding
authority, the court gives no weight or credence to the debtors'
efforts to excuse or justify their disobedience with the December
2, 2015, order to appear for Rule 2004 examinations or the
ensuing material default under the confirmed third modified plan.
If the debtors or their litigation attorney disliked, disputed,

1  or disagreed with the order to appear, they could have appealed

2  (or sought leave to appeal) that order and sought a stay pending

3  the appeal.  They also could have sought relief from that order

4  *before* the date they were required to comply with the order.

5  They did neither.  Instead, they elected to deliberately disobey

6  the order and failed to appear for Rule 2004 examinations.  And

7  in so doing, the debtors placed themselves in default of a

8  material term of the confirmed third modified plan.  That is

9  cause under § 1307(c)(6).

10

11 Additional Cause Based on the Totality of the Circumstances

12      In addition to the non-exclusive statutory list under

13 § 1307(c), the administration of a chapter 13 case in a manner

14 that constitutes an abuse of the bankruptcy or chapter 13 process

15 is cause for conversion.  In re Leavitt, 171 F.3d 1219, 1224 (9th

16 Cir. 1999) (citation omitted).  The following factors are

17 considered in making this determination:  (1) whether the debtor

18 misrepresented facts in the petition or plan, or unfairly

19 manipulated the Bankruptcy Code; (2) the debtor's history of

20 filings and dismissals; (3) whether the debtor intended to defeat

21 state court litigation; and (4) whether egregious behavior is

22 present.  A bankruptcy court is not required to find that each

23 factor is satisfied or even weigh each factor equally.  Khan v.

24 Curry (In re Khan), 523 B.R. 175, 185 (9th Cir. BAP 2014)

25 (citation omitted).  Rather, these factors are tools in

26 considering the totality of the circumstances.  Id.

27      Two of the four factors are not applicable in this case,

28 i.e, the debtors' history of filings and dismissals and whether

- 15 -

1   the debtors only intended to defeat state court litigation.

2   However, the exclusion of those factors does not end the court's

3   analysis. See Meyer v. Lepe (In re Lepe), 470 B.R. 851, 863 (9th

4   Cir. BAP 2012). Therefore, the court considers whether the

5   debtors misrepresented facts in the context of any plan or filed

6   any plan in any inequitable manner and whether egregious behavior

7   is present. Weighing these factors, the court finds both weigh

8   heavily in favor of a finding of additional cause.

9      From the inception of this case, the debtors have been less

10   than truthful. Knowing that the co-debtor's 50% interest in the

11   corporation was worth between $200,000 and $600,000, the debtors

12   filed schedules and amended schedules in which they stated under

13   oath the interest was worth only $42,250. The debtors then

14   manipulated and abused the confirmation process by using the

15   intentionally understated value to confirm plans that provided

16   for artificially reduced payments to creditors and increased

17   their share of non-exempt assets.

18      Had the debtors accurately valued the co-debtor's 50%

19   corporate interest consistent with information within their

20   possession, the terms of any plan would have required payments to

21   unsecured creditors well in excess of ten and fifty percent. In

22   that regard, the debtors deceived not only their creditors and

23   the trustee, but, the court as well.

24      When truthful and accurate information is the exception and

25   not the rule, and when the confirmation process is repeatedly

26   manipulated as was done in this case, the chapter 13 process is

27   abused. Therefore, based on the debtors' conduct in this case as

28   it pertains to the intentional undervaluation of the co-debtor's

- 16 -

1   50% interest in the corporation for purposes of manipulating the
2   chapter 13 process in general - and the plan confirmation process
3   in particular - the court concludes there is additional cause
4   under § 1307(c) based on what the court finds is a strong
5   satisfaction of at least two of the <u>Leavitt</u> factors.

6

7   <u>Debtors' Remaining Objections are Overruled</u>

8        In making its determination, the court has considered and
9   overrules the debtors remaining objections to conversion.

10       To the extent the debtors contend conversion is unfair to
11  their interests, the relevant consideration under § 1307(c) is
12  what is in the best interest of the creditors and the estate, not
13  the debtors.  This objection is overruled.

14       The objection that conversion is a breach by the corporation
15  and its other director of fiduciary duties owed the co-debtor as
16  a minority shareholder is overruled.  The debtor is not a
17  minority shareholder.  Moreover, the corporation's actions in
18  seeking conversion as a party in interest are also post-petition
19  actions authorized under and expressly sanctioned by the
20  Bankruptcy Code and within the jurisdiction of this court.

21       The objection that the debtors are unable to respond due to
22  the unavailability of evidence necessary to oppose the motion to
23  convert is overruled because, in reaching its decision, the court
24  has not relied (and need not rely) on the facts for which the
25  debtors contend evidence is necessary, i.e., (1) that the debtors
26  have appealed from interlocutory orders without the necessary
27  motion for leave, (2) that the debtors have conducted meritless
28  post-petition litigation, and (3) that the debtors and litigation

1   attorney violated court orders barring discovery related to

2   transfer and valuation of the co-debtor's corporate interest.

3   The debtors also fail to articulate what the purported additional

4   evidence is.

5        The objection that the motion to convert is an improper

6   revocation of the order confirming the third modified plan is

7   overruled.  Revocation of a confirmation order under 11 U.S.C.

8   § 1330 and conversion under § 1307(c) are different events.

9   Whereas § 1330 permits the court to revoke a confirmation order,

10  § 1307(c) permits the court to dismiss or convert a case if a

11  confirmation order is revoked.

12       Debtors' res judicata argument is overruled.  In making its

13  determination to convert, the court is required to consider the

14  totality of the circumstances as explained above.  The debtors'

15  default under the third modified plan is also a post-confirmation

16  event.

17       The objection that the corporation lacks standing under Rule

18  2004 is overruled.  Federal Rule of Bankruptcy Procedure 2004

19  states that "[o]n motion of any party in interest, the court may

20  order the examination of any entity."  Fed. R. Bankr. P. 2004(a).

21  Standing under Rule 2004 only requires "party in interest"

22  status.  The court has already ruled that the corporation is a

23  "party in interest" in this chapter 13 case.  On January 27,

24  2015, the corporation moved for relief from the automatic stay in

25  order to continue with California Corporations Code § 2000

26  proceeding pending before the state court.  The debtors opposed

27  that motion on the basis that the corporation lacked standing

28  because it was not a "party in interest."  The court overruled

- 18 -

1  that objection, found and stated on the record that the
2  corporation is a "party in interest," and granted the
3  corporation's motion to allow the state court to proceed with
4  valuation of the co-debtor's 50% corporate interest.  The debtors
5  did not appeal that order and the time to do so is long passed.[6]

6       Finally, the objection to the absence of an order that
7  requires the corporation, its principal, and its attorney to show
8  cause why they should not be sanctioned is overruled.  As a
9  matter of treating the parties equitably, the debtors suggest
10 that if their litigation attorney is subject to sanctions for the
11 reasons stated in the order to show cause discussed below, then
12 so too are the corporation, its principal, and its attorney.  As
13 is also explained below, the court's order to show cause directed
14 to the debtors' litigation attorney will be discharged and no
15 further sanctions ordered.  Treating the parties equitably, the
16 court overrules this objection as it pertains to the corporation,
17 its principal, and its attorney and denies the debtors' request
18 to the extent the objection could be construed as such.

---

24      [6]The court also notes that the corporation has a financial
25 interest at stake in this case.  It is identified as the party
   who will fund the plan by purchasing the co-debtor's 50%
26 corporate interest and it is potentially liable for substantial
   attorney's fees if it does not.  The debtors' opposition to the
27 motion to convert also identifies the corporation as a
   "creditor."  See In re Gucci, Inc., 126 F.3d 380, 388 (2nd Cir.
28 1997); see also In re PRTC, 177 F.3d 774, 777 (9th Cir. 1999).

                              - 19 -

## Conversion Over Dismissal

Having found that there is cause to convert or dismiss under § 1307(c), the court concludes that conversion rather than dismissal is in the best interest of the creditors and the estate. Given that the co-debtor's 50% corporate interest has been jointly valued by an appraiser selected by the debtors and another selected by the corporation, and given that the debtors have repeatedly and knowingly manipulated and undervalued that interest, in the course of performing his/her statutory duties, a chapter 7 trustee will be able to determine if that valuation is appropriate or if the estate should incur the administrative expense associated with further litigation over the joint valuation. In any case, there are significant non-exempt assets valued at well over $42,250 from which creditors may be paid.

## **Conclusion**

In sum, cause exists under § 1307(c), and specifically under § 1307(c)(6). And based on the significant non-exempt assets available to pay creditors, conversion rather than dismissal is in the best interest of the creditors and the estate. Therefore, the motion to convert is GRANTED and this case is ordered converted to a case under chapter 7 of the Bankruptcy Code.

A separate order will issue.

1  **II.   ORDER DENYING MOTION TO ALTER OR AMEND ORDER DENYING MOTION
       TO QUASH [Dkt. 232]**
2

3  **Introduction**

4       This is a motion by the debtors to alter or amend the order

5  placed on the record on December 2, 2015, as memorialized in

6  civil minutes entered December 4, 2015, and a civil minute order

7  entered on December 8, 2015.  The December 8, 2015, order denied

8  the debtors' motion to quash subpoenas served on the debtors

9  compelling document production and attendance at Rule 2004

10  examinations.

11       The court heard this motion on January 20, 2016.

12  Appearances were noted on the record.  The court denied this

13  motion for reasons stated on the record.  This order supplements

14  the court's oral ruling stated on the record in open court on

15  January 20, 2016.

16

17  **Discussion**

18       The debtors' motion to alter or amend was filed within

19  fourteen days and under Federal Rules of Civil Procedure 52(b)

20  and 59(e) as made applicable by, respectively, Federal Rules of

21  Bankruptcy Procedure 7052 and 9023.  In a recent opinion,

22  <u>Tattersalls, Ltd. v. DeHaven</u>, 745 3 F.3d 1294 (9th Cir. 2014),

23  the Ninth Circuit explained that if a court makes a substantive

24  change in its decision, the judgment must be amended under

25  Federal Rule of Civil Procedure 59(e).  <u>Id</u>. at 1299.

26       Amending a judgment under Rule 59(e)/9023 after its entry is

27  an extraordinary remedy which should be used sparingly.  <u>Allstate</u>

28  <u>Ins. Co. v. Herron</u>, 634 F.3d 1101, 1111 (9th Cir. 2011).  A Rule

- 21 -

1  59(e)/9023 motion may not be used to raise arguments or present

2  evidence for the first time that could have been raised or

3  presented earlier in the litigation.  Kona Enter., Inc. v. Estate

4  of Bishop, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted).

5  Such a motion may only be granted on one of four grounds: (1) if

6  such motion is necessary to correct manifest errors of law or

7  fact upon which the judgment rests; (2) if such motion is

8  necessary to present newly discovered or previously unavailable

9  evidence; (3) if such motion is necessary to prevent manifest

10  injustice; or (4) if the amendment is justified by an intervening

11  change in controlling law.  Allstate, 634 F.3d at 1111.

12      Debtors assert the remedy afforded under Rule 59(e)/9023 is

13  appropriate in this case for two reasons: (1) to correct manifest

14  errors of law and fact; and (2) to prevent manifest injustice.

15  Debtors' arguments are without merit.  Each of the arguments the

16  debtors now raise in the motion to alter or amend are either new

17  arguments raised for the first time on reconsideration but which

18  could have been raised with the debtors' initial motion to quash,

19  or have already been considered and rejected.

20      The debtors challenge the corporation's standing under Rule

21  2004.  The court overrules this objection for the reasons stated

22  in Section I, supra, which are incorporated herein by this

23  reference.

24      The debtors remaining arguments regarding the corporation's

25  use of Rule 2004 for plan revocation purposes and the authority

26  of the corporation's other shareholder could (and should) have

27  been raised with the initial motion to quash.  They were not and

28  the debtors offer no explanation for their failure or inability

- 22 -

1  to raise those arguments initially with the motion to quash.

2       The only arguments made in support of the motion to quash

3  were (1) that the corporation could not use Rule 2004 but,

4  rather, had to obtain any discovery under the Federal Rules of

5  Civil Procedure because of pending California Corporation § 2000

6  proceedings; and (2) the corporation had not demonstrated good

7  cause. The court rejected both arguments finding (1) that the

8  discovery sought by the corporation under Rule 2004 was unrelated

9  to the California Corporations Code § 2000 proceedings and

10  therefore the use of Rule 2004 was appropriate, and (2) inasmuch

11  as the corporation invoked Rule 2004 to ascertain if the debtors

12  engaged in any wrongdoing with respect to their duties and

13  obligations under the Bankruptcy Code and under the confirmed

14  third modified plan, the use of Rule 2004 was appropriate and

15  good cause for its use was shown. The debtors said nothing about

16  plan revocation under § 1330 or the corporation's or its

17  principal's authority to invoke Rule 2004. The court will not

18  entertain those arguments now, raised for the first time on

19  reconsideration, when they easily could (and should) have been

20  raised initially with the motion to quash.

21       Therefore, based on all the foregoing and for the reasons

22  previously stated on the record on January 20, 2016, the debtors'

23  motion to alter or amend the court's December 8, 2015, order

24  denying the debtors' motion to quash the corporation's Rule 2004

25  subpoenas, ordering the debtors to produce documents, and

26  ordering the debtors to appear for Rule 2004 examinations is

27  DENIED.

28       A separate order will issue.

- 23 -

1
2

### III. ORDER DENYING APPLICATION FOR RULE 2004 EXAMINATION AND QUASHING RELATED SUBPOENA [Dkts. 228, 237]

3
4
5
6
7
8
9

On December 9, 2015, the debtors filed an application to examine the corporation and its principal under Rule 2004 with a related subpoena for document production and compelling attendance. The application was set by the court for hearing, and was heard, on January 20, 2016. Appearances were noted on the record. For the reasons explained below, the application will be denied and the related subpoena quashed.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

As ordered in Section I, this case is converted to a chapter 7 case. The debtors' Rule 2004 application states that the purpose of the requested examination and document production is to determine the debtors' and estate's rights to compel distributions from the corporation and any claims the debtors may have against the corporation for wrongful distribution. On pages 9-10 of the document filed at docket no. 258, which is the debtors' opposition to this court's order to show cause entered on December 15, 2015, and discussed in Section IV, _infra_, the debtors suggest that the Rule 2004 examination and document production are also necessary to determine if the debtors can perform under the third modified plan if the corporation dissolves. Since this case is now converted, any cause of action against the corporation, if any, will be brought by the chapter 7 trustee. And given conversion, plan performance and implementation are no longer an issue.

26
27

Therefore, for the foregoing reasons, the debtors' application for an order permitting Rule 2004 examinations of the

28

- 24 -

1  corporation and its principal is DENIED and the related subpoenas
2  are QUASHED.

3          A separate order will issue.

4

5  **IV.  ORDER DISCHARGING ORDER TO SHOW CAUSE WITH NO FURTHER**
       **SANCTIONS [Dkt. 237]**
6

7          On December 15, 2015, the court entered an order to show

8  cause directing debtors' litigation attorney to show cause why he

9  should not be sanctioned for attempting to use the debtors'

10 December 9, 2015, Rule 2004 application and subpoena to obtain

11 discovery related to a stayed evidentiary hearing on the

12 valuation and transfer of the co-debtor's 50% corporate interest.

13 The court heard this matter on January 20, 2016.  Appearances

14 were noted on the record.

15         The court stayed an evidentiary hearing on the valuation and

16 transfer of co-debtor's 50% corporate interest under California

17 Corporations Code § 2000 after the debtors appealed from two

18 orders the court considers interlocutory orders related to that

19 matter.  The court stayed the evidentiary hearing in order to

20 allow the district court to decide if it is necessary to construe

21 the debtors' notices of appeal as motions for leave to appeal

22 and, if so, whether it will hear the appeals.  The possibility of

23 sanctions was based on what the court perceived as an attempt by

24 the debtors to use the Rule 2004 process and related subpoena

25 discussed in Section III, _supra_, to circumvent that stay and

26 obtain discovery related to the valuation and transfer

27 proceedings.

28         Since the debtors' Rule 2004 application has now been denied

- 25 -

1   and the related subpoena quashed as ordered in Section III,

2   _supra_, the order to show cause will be DISCHARGED as moot.   No

3   further sanctions are ordered.

4          A separate order will issue.

5          Dated:   February 3, 2016.

6

7

8                         UNITED STATES BANKRUPTCY JUDGE

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

Arthur Samuel Humphrey
78 Cernon St #A
Vacaville CA 95688

W. Scott de Bie
P.O. Box 981444
West Sacramento CA 95798

Thomas R. Phinney
400 Capitol Mall, Suite 2560
Sacramento CA 95814

Jan P. Johnson
PO Box 1708
Sacramento CA 95812